HALL vs. SCOTT, Special Administrator, etc.

*December 12, 1883 — January 8, 1884*

*(1) Court and jury: Evidence of fraud.    (2) Practice: Trial while party is insane.*

1. Evidence (stated in the opinion) of fraud in procuring a chattel mortgage is *held* sufficient to justify the submission of the question to the jury.
2. During the trial counsel for the defendant stated that his client was paralyzed and of unsound mind. The statement was made merely as an excuse for the defendant not appearing in court. No objection was made to proceeding with the trial, and there was no application for the appointment of a guardian *ad litem. Held,* that it was not error to proceed with the trial.

APPEAL from the Circuit Court for *Milwaukee* County.

Action of trespass for the unlawful taking by the defendant, N. B. Caswell, of certain millinery goods and fixtures belonging to the plaintiff. The defendant justified the taking under and by virtue of a chattel mortgage executed by the plaintiff and ·her husband. The evidence relating to the validity of the mortgage is sufficiently stated in the opinion.

During the trial a witness on behalf of the defendant was asked as to his mental condition. · Plaintiff's counsel thereupon agreed to take the statement of the defendant's counsel in regard to it, and the latter said: "I state that Mr. Caswell is paralyzed so that he cannot speak a person's

name, and, from my observation and inquiry, speaking to him, I infer that he is mentally incapacitated; he is affected with what is commonly called 'dementia.' I merely give this as an excuse for his not appearing in the case." Defendant's counsel then called another witness and proceeded with the trial.

An instruction asked on behalf of the defendant, that "there is no testimony to invalidate or tending to invalidate the chattel mortgage read in evidence, and therefore the jury should find for the defendant," was refused. The instructions given will sufficiently appear from the opinion.

There was a verdict for the plaintiff. A motion for a new trial was denied, and judgment was entered on the verdict. Subsequently the defendant died, and *Frederick M. Scott*, having been appointed special administrator, caused the suit to be revived, and appealed from the judgment.

For the appellant there were briefs by *Geo. W. & Chas. W. Lakin*, his attorneys, and *Ordway & Hoyt*, of counsel, and oral argument by *Mr. Ordway*.

For the respondent there was a brief by *Chapin, Dey & Friend*, and oral argument by *Mr. Chapin*.

COLE, C. J.  The principal question in this case is, Was there sufficient evidence of fraud in procuring the chattel mortgage from the plaintiff to warrant the submission of the question of its invalidity to the jury? It is claimed on the part of the defendant that as the mortgage was signed by the plaintiff and actually delivered, it must be deemed valid until the contrary was shown by a clear preponderance of evidence. This rule the trial court really recognized and acted upon in submitting the case to the jury. The jury were directed by the court, in its charge, that the burden was upon the plaintiff to satisfy them by the preponderance of testimony that the chattel mortgage was procured by fraud on the part of Mr. Caswell or his agent, and that the

fraud must have consisted of some deceptive conduct, some misrepresentation, which induced the plaintiff to do that which she did not understand or intend to do; in other words, that she was induced to sign the mortgage by being deceived or misled as to the nature of the instrument. Was there, then, sufficient evidence of fraud in procuring the chattel mortgage to justify the submission of the question to the jury? We are inclined to think there was.

It is true, the plaintiff's case rests mainly upon her own testimony. The account which she gives of the circumstances under which the chattel mortgage was executed is in substance this: She testified that Mr. Caswell, on or about the date of the mortgage, called upon her, at the store which he had previously rented to her husband, and inquired if she wanted the store another year. She answered she did. In the evening of the same day Mr. Caswell again called, and said he was making a change in his leases, and wanted her signature to a lease; that she readily signed the instrument which he presented, supposing it to be a lease; that Mr. Caswell was in a great hurry, came into the store "as though he was flying," and only remained three or four minutes. She says she did not examine the paper which she signed, but Mr. Caswell called it a lease, and she supposed it was what had been talked about,— a lease for another year. Now, according to her statements, she was deceived and misled by Mr. Caswell as to the nature of the instrument she executed, and she did not know it was a chattel mortgage upon her stock of goods, nor did she intend to give such a mortgage. Her statements are in some degree corroborated by the testimony of her mother, who said she was present when Mr. Caswell came to the store and wanted the plaintiff and her husband to sign a lease. But the evidence produced on the part of the defendant as to the person who procured the chattel mortgage from the plaintiff, and all of the circumstances attending its execution, is wholly and en-

tirely different. · It is impossible to reconcile the statements of the witnesses upon the subject. Mr. I. S. Clark testified that he acted for Mr. Caswell in the transaction of this business and took the chattel mortgage. He states he conferred with the plaintiff with reference to the payment of rent past due, and says, as the result of the interview, the plaintiff proposed to give a chattel mortgage upon her millinery stock, furniture, etc., to secure it, which proposition he accepted on behalf of Mr. Caswell. This witness gives a consistent account of the way the business was transacted; testifies that the plaintiff herself proposed the giving of the chattel mortgage; so of course she must have fully understood the nature of the instrument she executed, and there could be no deceit or fraud in procuring her signature. But it is not necessary to go into any minute examination of the evidence. Some particulars bearing upon the probability of the conflicting statements have been omitted. We have only alluded to the more material portions of the evidence on both sides in respect to the execution of the chattel mortgage; and, as we have said, it is plainly impossible upon any theory to reconcile the testimony upon that point. But it was for the jury to determine what credit was to be given the totally different statements of the witnesses. It was for the jury to find the facts as to the execution of the mortgage,— whether it was really procured by Mr. Caswell under the circumstances testified to by the plaintiff, or whether it was given as stated by the witness Clark. We cannot say the jury were not at liberty to believe the plaintiff, even though we might think the preponderance of proof and the probabilities of the case were against the truth of her statements. It seems the jury saw fit to credit her testimony, and must have found, under a proper charge as to the law, that the mortgage was procured through fraud and misrepresentation, as she claimed. If that were so, it is not pretended that the mortgage was valid. The court also charged that if the

mortgage was procured by fraud and the plaintiff knew it, then if she permitted or consented to the taking of the property under it she could not recover in the action. This charge was quite as favorable for the defendant as the law and facts of the case would warrant, if not more so.

The defendant in his answer admitted the taking of the goods in question and the sale of the same pursuant to the authority given in the mortgage, so there is no room for controversy upon that point. As we understand the verdict, the jury awarded the plaintiff the value of the goods as claimed by her when taken, with interest thereon.

The point is made that it was error for the court to proceed with the trial after its attention was called to the fact that the defendant Caswell was paralyzed and was not of sound mind. No objection, however, was taken to the court's proceeding with the trial, and there was no application for the appointment of a guardian *ad litem*. The attention of the court seems to have been called to Mr. Caswell's condition merely as an excuse for his not appearing in the case. Under the circumstances we do not think error can be predicated upon the fact that the trial proceeded to verdict and judgment.

*By the Court.*— The judgment of the circuit court is affirmed.